IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPH PERNELL RUTH,      §
TDCJ-CID NO. 119886,       §
                              §
           Petitioner,     §
                              §
v.                            §
                              §     CIVIL ACTION NO. H-13-0277
RICK THALER, Director,    §
Texas Department of Criminal §
Justice, Correctional      §
Institutions Division,     §
                              §
           Respondent.    §

## MEMORANDUM OPINION AND ORDER

Joseph Pernell Ruth, proceeding pro se, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Docket Entry No. 1) challenging his state court conviction of murder. Pending before the court is Respondent Thaler's Motion for Summary Judgment with Brief in Support ("Motion for Summary Judgment") (Docket Entry No. 22). For the reasons explained below, the court will grant Thaler's Motion for Summary Judgment and will deny Ruth's Petition. The court will also dismiss Ruth's Motion for Leave Requesting Discovery ("Motion for Discovery") (Docket Entry No. 21).

## I.  Factual and Procedural Background

Joseph Pernell Ruth was charged with murder by a Texas state court, enhanced by a prior murder conviction.[1]  A jury found Ruth guilty of murder,[2] Ruth pled true to the enhancement, and he was sentenced to 99 years in prison.[3]  The facts of the case are summarized by the Court of Appeals for the Fourteenth District of Texas.

> Appellant is married to Clara Ruth, and they have four children together.  Several years after they were married, appellant began a romantic relationship with the victim, Kenjenea Williams.  Appellant and Williams eventually had two children together, and both of these children are the same ages as two of his children with Clara.  Appellant and Clara lived in a house on Greencraig Street in Houston, Texas, and appellant rented a nearby apartment for Williams.  Sometimes appellant lived on Greencraig with Clara, and sometimes he stayed with Williams.  At times, Williams's children lived with appellant and Clara on Greencraig, and at other times, they lived with Williams in her apartment.  Angelica Ruth, appellant and Clara's oldest daughter, considered Williams's children to be her brother and sister.
>
> The living arrangements and relationship between appellant and these two women were complex and volatile.  After Clara learned of the appellant's relationship with Williams, Clara, with appellant's help, tried to physically evict Williams from her apartment.  At one

---

[1]See Indictment, The State of Texas v. Joseph Pernell Ruth, Cause No. 01938146, included in State Court Records, Docket Entry No. 23-28, p. 10.

[2]See Jury Verdict, The State of Texas v. Joseph Pernell Ruth, Cause No. 914967, included in State Court Records, Docket Entry No. 23-29, p. 23.

[3]See Judgment on Plea Before Jury, Court/Jury Assessing Judgment, The State of Texas v. Joseph Pernell Ruth, Cause No. 914967, included in State Court Records, Docket Entry No. 23-29, pp. 39-40.

-2-

point, appellant obtained a restraining order against Williams, which he then ignored to continue his relationship with her.

In early June 2002, Williams was arrested for cocaine possession, and appellant loaned her money to get out of jail. Appellant was very concerned that Williams repay this money, and he told Williams's cousin, "I promise you, man, if your cousin don't pay me back this money, y'all going to be missing a family member." On June 12, 2002 around 6:30 p.m., while Williams was at a car repair shop, appellant came up behind Williams and grabbed her and said, "Where's my $4,000 b---- (expletive)." The car repair shop owner testified that appellant seemed very angry and that Williams seemed scared and appeared to be trying to calm appellant. After he found out that she had paid for her car repair, appellant grabbed Williams's hand and said, "Let's go." Williams was killed shortly thereafter.

According to a written statement by Angelica, who was nine years old at the time, she and her mother and siblings were at their home on Greencraig when appellant and Williams arrived. She heard appellant and Williams arguing and then saw Williams on her knees and appellant standing over Williams with a gun in his hand. Angelica heard Williams say, "Please, no, Joe." Appellant then said, "You going to take care of the kids?," and Williams responded, "Yes, I will." While Clara was gathering the children to take them out of the house, Angelica saw appellant and Williams, still arguing, go into the back yard. Clara, Angelica, and the rest of the children left. Angelica told the police she did not hear or see the shooting.

Clara and the children went to a house where several of Clara's relatives lived, including her cousin and mother. According to Clara's cousin, who testified at trial, Clara showed up scared, crying, and hyperventilating and asked to speak to her mother. When Clara's mother came outside, Clara said to her, "Joseph shot Kenjenea." Clara explained that appellant and Williams had been arguing and that she saw appellant shoot Williams nine times in the head and many more times in the body. Clara's mother called 911 for her, and Clara told the 911 operator, "I left my house and my husband's girlfriend whatever was in the house and . . . they started arguing. He pulled out a gun so I left. . . . I

don't know what's going to happen. . . . They're arguing.
He has a gun. . . . They always have arguments."

Police responded and arrived at the house on
Greencraig at about 7:26 p.m.  They found Williams dead
in the back yard with a total of fifteen gunshot wounds,
nine of which were in the head and face.  Soon, relatives
of both appellant and Williams began to gather at the
scene.  Around 10:30 that evening, appellant approached
a parked Houston Police Department patrol car and told
the officer, Joel Garza, "Officer, I'm wanted.  I just
killed my wife, the mother of my kids.  Please take me
in."  Officer Garza was at the end of his shift
completing paperwork so he could go home, and he really
did not want to deal with appellant.  He asked appellant,
"What?," and appellant stated, "Please, officer, hurry
up.  They're coming.  Her relatives are coming to kill
me.  Please, hurry up, take me in."  Officer Garza, who
knew nothing about the murder, thought he was dealing
with a "nut case," so he planned on dropping appellant
off at the main police station.  Garza opened the back of
his police car, and appellant got inside.  According to
Garza, during the drive, appellant was very talkative and
told him that he killed the mother of his children
because he had taken money out of savings to post bail
for her and "he had it" with her.  Appellant also told
Officer Garza that he had gotten a protective order
against her and that he was "tired of her stupid mess."
Officer Garza called homicide and learned of the murder.
He then took appellant to the homicide division.
Appellant denied that he told Officer Garza that he
murdered anyone and claims that he wanted to be taken
into custody solely for protection from Williams's
relatives.[4]

The Fourteenth District Court of Appeals affirmed Ruth's conviction

on June 21, 2005.[5]  Ruth filed a Petition for Discretionary Review

("PDR") with the Texas Court of Criminal Appeals ("CCA"),[6] which

---

[4]Ruth v. State, 167 S.W.3d 560, 563-64 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref'd).

[5]Id. at 571.

[6]See Petition, Docket Entry No. 1, p. 3.

was refused on March 22, 2006.[7] On March 30, 2007, Ruth filed an application for a state writ of habeas corpus.[8] The CCA remanded the case to the trial court. The state district court, after reviewing the trial records, entered findings of fact and conclusions of law recommending that the habeas application be denied. (Docket Entry No. 23-37, p. 5-9) The state habeas application with the findings and records was returned to the CCA, which denied the application without a written order on January 16, 2013.[9] Ruth filed the federal petition before this court on January 30, 2013.[10]

## II. <u>Standard of Review</u>

**A. Summary Judgment**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511

---

[7] <u>Id.</u>

[8] <u>See</u> Application for Writ of Habeas Corpus, <u>Joseph Pernell Ruth v. The State of Texas</u>, Application No. WR-75,848-02, Docket Entry No. 23-33, p. 2-10.

[9] <u>See</u> Application for Writ of Habeas Corpus, <u>Joseph Pernell Ruth v. The State of Texas</u>, Application No. WR-75,848-02, Docket Entry No. 23-37, p. 1.

[10] <u>See</u> Petition, Docket Entry No. 1.

-5-

(1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not *negate* the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). If the moving party meets this burden, Rule 56(c) requires the nonmovant to show that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000).

## B.   Presumptions Applied in Habeas Cases

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody." Harrington v. Richter, 131 S. Ct.

770, 783 (2011).  When considering a summary judgment motion, the court usually resolves any doubts and draws any inferences in favor of the nonmoving party.  <u>Reeves</u>, 120 S. Ct. at 2110.  However, the amendments to 28 U.S.C. § 2254 contained in the AEDPA change the way in which courts consider summary judgment motions in habeas cases.

In a habeas proceeding, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be correct."  This statute overrides the ordinary summary judgment rule.  <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002) (overruled on other grounds by <u>Tennard v. Dretke</u>, 124 S. Ct. 2562, 2565 (2004)).  A court will accept findings made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

The provisions of § 2254(d) set forth a "highly deferential standard for evaluating state-court rulings." <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2066 n.7 (1997).  A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1519-20 (2000). A decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 1523.

In reviewing a state court's determination regarding the merit of a petitioner's habeas claim, a federal court cannot grant relief if "fair-minded jurists could disagree on the correctness of the state court's decision." <u>Richter</u>, 131 S. Ct. at 786 (internal quotation marks omitted).

### III. <u>Analysis</u>

Ruth presents the following claims:

1.  Denial of a fair trial and due process because Ruth's trial counsel "failed to challenge for cause or use a peremptory strike on two venire members who could not consider the minimum punishment;"

2.  Denial of a fair trial and due process because Ruth's trial counsel "failed to challenge for cause or peremptorily a venire member" who claimed to give more credibility to a testifying police officer than Ruth, despite contrary instructions from the judge – this venire member served on the jury;

3.  Denial of Effective Assistance of Counsel because Ruth's trial counsel "fail[ed] to prepare for trial;"

4.   Denial of Effective Assistance of Counsel because
     Ruth's trial counsel did not prepare for the
     prosecution's witness during the punishment phase
     of the trial;

5.   Denial of Effective Assistance of Counsel because
     appellate counsel failed to:

     a.   "raise record based claims on later federal
          review (appellate review)" namely:

          (1)   prosecutorial misconduct;

          (2)   "ineffective assistance of counsel at
                trial for failing to strike jurors [or]
                put on a valid defense";

          (3)   trial court error in failing to grant a
                mistrial;

          (4)   trial court error in failing to quash the
                jury panel;

          (5)   trial court error in failing to "give the
                jury charge on sudden passion adequate
                cause"; and

     b.   properly brief the 911 claim regarding
          testimonial nature of the 911 call;

6.   Ruth was denied the right to effective assistance
     of counsel as guaranteed by the 6th and 14th
     amendments of the U.S. Constitution by his
     counsel's failure to put on a valid defense based
     on the facts of the case;

7.   Ruth's "right to confrontation . . . was violated
     by court admitting [Ruth's] wife's 911 call;" and

8.   "Trial counsel was ineffective for failing to bring
     an affirmative defense and an expert on family
     violence where [Ruth] was a victim of family
     violence at the hands of deceased for several
     years."[11]

---

[11]See Petition, Docket Entry No. 1; see also Memorandum of Law
in Support of 28 U.S.C. § 2254 ("Memorandum of Law"), Docket Entry
No. 4.

**A.    Procedurally Barred Claims**

In his Motion for Summary Judgment, Thaler argues that Ruth's claims for ineffective assistance of counsel based on -- (1) appellate counsel's failure to raise the issue of trial counsel's failure to strike jurors or put on a valid defense [claim 5.a.2] and (2) trial counsel's failure to raise the defense of Battered Partner Syndrome and call an expert witness [claim 8] -- are procedurally barred because they were not exhausted as required by 28 U.S.C. § 2254(b).[12]

Under 28 U.S.C. § 2254, a habeas petitioner must exhaust available state remedies before seeking relief in the federal courts. See Nobles v. Johnson, 127 F.3d 409, 419-420 (5th Cir. 1997). To exhaust his state remedies the petitioner must fairly present the substance of his claims to the state courts, and the state's highest criminal court must have an opportunity to review the merits of the claims. Id. citing Picard v. Connor, 92 S. Ct. 509, 512-13 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990). In Texas a petitioner satisfies this requirement by properly filing a PDR with the Texas Court of Criminal Appeals or, in a post-conviction matter, by filing a state application for a writ of habeas corpus in state district court under TEX. CODE CRIM. P. art. 11.07, which forwards the application to the Court of Criminal Appeals. See Richardson v. Procunier, 762 F.2d 429, 431-

---

[12]See Motion for Summary Judgment, Docket Entry No. 22, pp. 10-12.

32 (5th Cir. 1985).  The fact that an appeal has "been through" the state court system is not enough to satisfy the exhaustion requirement; the highest court must have a reasonable opportunity to consider the merits of each of the claims presented in a federal habeas petition.  Picard, 92 S. Ct. at 512.

The court has reviewed the state records and has found that the following claim was presented in Ruth's PDR:

> The Court of Appeals' resolution of Ruth's claims regarding the admission of a 911 tape, during the guilt phase of his murder trial, violated his right of confrontation under both the Texas and Federal Constitutions.

Ruth v. State, No. 1048-05, PDR, at 5.

The following claims were presented in Ruth's state application for a writ of habeas corpus:

1.   Ruth's trial counsel was ineffective for failing to challenge two biased jurors who could not consider minimum punishment;

2.   Ruth's trial counsel was ineffective for failing to challenge a juror who was biased against Ruth;

3.   Ruth's trial counsel was ineffective for failing to prepare for trial;

4.   Ruth's trial counsel was ineffective in failing to interview a punishment witness before trial;

5.   Ruth's trial counsel was ineffective in failing to properly object to oral hearsay of a witness who was unavailable at trial;

6.   Ruth's trial counsel was ineffective in failing to challenge the State's theory of "excited utterance" and by opening the door on a witness statement. Counsel was also ineffective by being rude and unprepared;

7.   Ruth's appellate counsel was ineffective by failing to raise claims based on the following objections raised by trial counsel: prosecutorial misconduct, ineffective assistance of trial counsel; trial court's failure to grant jury charge of "sudden passion"; and trial court's failure to quash jury panel; and

8.   Ruth's trial counsel was ineffective in failing to put on a valid defense in that the defense went against the great weight of evidence showing that Ruth had some culpability for the offense for which he was tried.

Ex parte Ruth, No. 75,848-02, at 00006-00014.

Missing from both Ruth's PDR and his state habeas application are Ruth's federal habeas claims regarding (1) his appellate attorney's alleged failure to timely raise the issue of trial counsel's failure to strike jurors or put on a valid defense and (2) trial counsel's failure to raise the defense of Battered Partner Syndrome and call an expert witness.

In most cases this action would be subject to dismissal without prejudice in order to allow Ruth the opportunity to exhaust all of his claims through the state habeas process. Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998), citing Rose v. Lundy, 102 S. Ct. 1198 (1982). However, Ruth has already filed a state habeas application and may not file another one challenging the same conviction asserting claims that could have been previously raised. TEX. CODE CRIM. P. art. 11.07 § 4. Federal courts have consistently held that Texas's abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling. Matchett v. Dretke, 380 F.3d 844, 848

-12-

(5th Cir. 2004); <u>Henderson v. Crockwell</u>, 333 F.3d 592, 605 (5th
Cir. 2003); <u>Horsley v. Johnson</u>, 197 F.3d 134, 137 (5th Cir. 1999).
Claims are therefore subject to dismissal pursuant to a procedural
bar where there are no remedies available in the state courts.
<u>Fuller v. Johnson</u>, 158 F.3d 903, 906 (5th Cir. 1998).

Ruth may only overcome his procedural default by demonstrating
cause and prejudice or that failure to consider the claim would
result in a fundamental miscarriage of justice. <u>Ibarra v. Thaler</u>,
687 F.3d 222, 225 (5th Cir. 2012), <u>citing</u> <u>Coleman v. Thompson</u>, 111
S. Ct. 2546, 2562-63 (1991); <u>Morris v. Dretke</u>, 413 F.3d 484, 491-92
(5th Cir. 2005). Cause is demonstrated by the petitioner
establishing that some objective external factor impeded his
efforts to present his claim to the state courts. <u>Moore v.</u>
<u>Quarterman</u>, 534 F.3d 454, 463 (5th Cir. 2008). If the petitioner
fails to show cause for the default, the court need not consider
whether prejudice has been shown. <u>Meanes v. Johnson</u>, 138 F.3d
1007, 1011 (5th Cir. 1998). Fundamental miscarriages are limited
to cases where it is shown that the petitioner is actually innocent
of the crime. <u>McGowen v. Thaler</u>, 675 F.3d 482, 499-500 (5th Cir.
2012). This requires factual proof that the petitioner did not
commit the offense for which he was convicted. <u>Id.</u>

In his response, Ruth states that he is incarcerated and must
rely on custodial officials to mail his pleadings (Docket Entry
No. 25, at 16-17). He contends that his confinement is an
impediment and is cause for his failure to present these claims in

the state courts.  Id.  Ruth's status as a pro se habeas petitioner does not excuse his failure to comply with the state's procedures for exhausting his claims.  Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992); see also Ibarra, 687 F.3d at 227.  Ruth also argues that his claims are meritorious.  The court will not consider this argument because Ruth has failed to show cause for the default.  Meanes, 138 F.3d at 1011.  Ruth also fails to show that the bar will result in a fundamental miscarriage of justice because he presents no proof that he is actually innocent of the crime.  McGowen, 675 F.3d at 499-500.

**B.    Claims:   Ineffective Assistance of Counsel**

The primary focus of Ruth's federal petition for a writ of habeas corpus is that he was denied effective assistance of counsel at trial and on appeal.  To prove ineffective assistance of counsel Strickland v. Washington provides a two-prong test that requires the defendant to prove (1) deficient performance by counsel and (2) actual prejudice to the defense as a result of the deficient performance.  Strickland, 104 S. Ct. 2052 at 2064.  To meet the first prong Ruth must prove that the errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Constitution.  Id.  "[T]here is a strong presumption that the performance [of counsel] falls within the wide range of reasonable professional assistance."  Carter v. Johnson, 131 F.3d 452, 463 (1997).

-14-

To meet the second prong Ruth must prove that "counsel's errors were so serious as to deprive [Ruth] of a fair trial, a trial whose result is reliable." Strickland, 104 S. Ct. at 2064. A "mere possibility" that a different result might have occurred is not enough to demonstrate prejudice. Lamb v. Johnson, 179 F.3d 452, 463 (5th Cir. 1997). Application of Strickland's second prong under § 2254(d) compels the court to ask "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788. If the Court can surmise a reasonable explanation, then Ruth's burden is not met. Id. The Court will now apply this heightened Strickland standard to each of Ruth's claims for ineffective assistance of counsel. See Strickland, 104 S. Ct. 2052 at 2064.

## C.   Claims 1 and 2:  Failure to Strike Jurors

In his first claim Ruth asserts that his trial counsel was ineffective because counsel "failed to challenge for cause or use a peremptory strike on [Jurors 16 (Singleton) and 38 (DeLeon)] who could not consider the minimum punishment."[13] A trial attorney can be considered ineffective for failing to challenge veniremembers who specifically state that they cannot be fair and impartial to the defendant. Virgil v. Dretke, 446 F.3d 598, 609-610 (5th Cir. 2006). However, an attorney's "conscious and informed decision on

---

[13]See Memorandum of Law, Docket Entry No. 4, p. 4 (p. 3 by his numeration).

trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008), quoting Cotton v. Cockrell, 343 F.3d 746, 752-53 (5th Cir. 2003).

The trial court found that Juror 16 generally indicated that he could not consider the minimum punishment of 5 years as appropriate for someone convicted of murder; however, the response was not more fully explored.  (Docket Entry No. 23-37, p. 6)  With regard to Juror 38, the court found that it was not completely clear whether he could consider 5 years.  Id.  The trial court also noted that Ruth had been previously convicted and that his minimum punishment was 15 years.  Id.  See also Tex. Penal Code § 12.42(c)(1) (West 2011) (15-years-to-life is punishment range for defendant convicted of a first-degree felony with a prior felony conviction).  Pursuant to the trial court's findings, the CCA found that none of the challenged veniremembers unequivocally stated that they were unable to serve as a fair and impartial juror.  (Docket Entry No. 23-37, p. 7)  The issue of juror bias is a factual finding.  Virgil, 446 F.3d at 610 n.52, citing Patton v. Yount, 104 S. Ct. 2885 (1984).  Under the AEDPA this court can only overturn the implicit factual findings of the state court if Ruth rebuts the presumption of correctness "by clear and convincing standards."  28 U.S.C. § 2254(e)(1).

Ruth presents no evidence that his attorney was deficient in failing to strike the two jurors. The trial record shows that during voir dire the judge asked the jurors whether they could consider a minimum five-year sentence as well as a maximum life sentence. Voir Dire at 76-87 [not scanned]. Each of the panelists, including Singleton and DeLeon, answered with either a yes or no without further elaboration. Id. Ruth's attorney later questioned the juror panelists at length about their backgrounds and possible biases. Id. at 138-185. The record also shows that he struck a juror for cause. Id. at 186-187; see also Appeals Record at 69 [not scanned].

The trial judge's question regarding whether the jurors could consider a five-year minimum sentence is inapplicable in this proceeding because Ruth was facing a fifteen-year minimum if convicted. Tex. Penal Code § 12.42(c)(1) (West 2011). Moreover, there was no statement from any of the jurors that they could not be fair and impartial. See Virgil, 446 F.3d at 609-610.

Even if Ruth could show that his trial counsel's performance was deficient, he fails to satisfy the second prong of the Strickland test, which requires a showing that the deficient performance prejudiced his defense. See Strickland, 104 S. Ct. at 2064. Ruth was found guilty based on eyewitness statements that placed him at the scene of the crime threatening and pointing the murder weapon at the victim. Ruth made a voluntary statement to a police officer admitting that he had shot the victim. After being

-17-

found guilty, Ruth was sentenced to 99 years in prison.   Ruth must show that his sentence would have been "significantly less harsh" but for his attorney's errors.   Charles v. Thaler, 629 F.3d 494, 499 (5th Cir. 2011), citing Dale v. Quarterman, 553 F.3d 876, 880 (5th Cir. 2008), quoting Spriggs v. Collins, 993 F.2d 85, 88-89 (5th Cir. 1993).   In determining whether an attorney's deficient performance prejudiced the defense, the court considers the following:   "the actual amount of the sentence imposed on the defendant by the sentencing judge or jury; the minimum and maximum sentences possible under the relevant statute or sentencing guidelines, the relative placement of the sentence actually imposed within that range, and the various relevant mitigating and aggravating factors that were properly considered by the sentencer."   Miller v. Dretke, 420 F.3d 356, 365 (5th Cir. 2005) quoting Spriggs at 88-89.

While Ruth was given almost the maximum possible sentence, the record shows that he shot the victim fifteen times after an extended confrontation in which she begged him not to hurt her. Moreover, this was not Ruth's first murder.   During the punishment phase of the trial, the jury heard testimony that Ruth had been previously convicted of murder and had been sentenced to thirty years in the Texas Department of Corrections in 1980.   (Docket Entry No. 23-30, pp. 23-25)   He was also convicted of two counts of attempted murder and sentenced to ten years in each case.   Id.   The jury also heard testimony from one of the attempted murder victims,

-18-

Vivian Gray, Ruth's first wife.  (Docket Entry No. 23-30, pp. 74-118)  Gray described Ruth's violent and abusive behavior towards her, which led to their estrangement and divorce.  Id. at 84-94. Gray then described the 1980 murder and attempted murder in which Ruth used a gun to fire multiple shots at his wife's family in the presence of his infant son.  Id. at 95-100.  Gray and her mother were hospitalized after being gravely wounded in the incident.  Id. at 100-102.  Her stepfather, who was also present at the shooting, died from his gunshot wounds.  Id. at 101.

The jury's sentence is justified by the brutal and heinous manner in which Ruth shot and murdered Kenjenea Williams.  Charles, 629 F.3d at 499.   Ruth's record of criminal behavior, which includes prior acts of domestic violence and a prior murder and attempted murders, further justifies the jury's decision.  Id.; see also McGruder v. Puckett, 954 F.2d 313, 317 (5th Cir. 1992) (defendant's life sentence without parole for auto burglary was not disproportionate to the gravity of the defendant's prior convictions for armed robbery).  Ruth fails to provide evidence that the alleged bias affected his ultimate sentence, and consequently does not satisfy Strickland's second prong.

In his second claim regarding the failure to strike a juror, Ruth asserts that his counsel was ineffective because he "failed to challenge for cause or use a peremptory strike on [Juror 12 (A. Rodriguez)]" who claimed to give more credibility to a

-19-

testifying police officer than Ruth, despite contrary instructions from the judge.[14]

Ruth points out that trial counsel challenged veniremember Fisher, who had expressed a tendency to give a police officer more credibility.[15]  Ruth's counsel did not challenge Juror 12 who also expressed a similar sentiment.  Ruth draws a comparison to Virgil where the court found that an attorney's failure to challenge two jurors - who expressed bias against the defendant - operated as ineffective assistance of counsel.[16]  See Virgil, 446 F.3d at 609-610.  In Virgil one juror was biased due to a relationship with a law enforcement officer, while the second was biased against a defendant with a prior conviction due to his mother's recent mugging, which "weighed" on him.  Id. at 609-610.  The two venire-members in Virgil expressed concrete reasons for a bias; these concrete reasons were implicitly unlikely to be able to be put aside.  See id.  The Fifth Circuit later emphasized that the biased Virgil jurors were asked questions in response to which they explicitly admitted a likely inability to be "fair and impartial" due to these biases.  See White v. Quarterman, 275 F. App'x 380 (5th Cir. 2008).

---

[14]See Petition, Docket Entry No. 1, p. 6.

[15]See Memorandum of Law, Docket Entry No. 4, p. 19.

[16]See id. at 24.

Unlike <u>Virgil</u>, in this case Ruth provides no evidence of any comparable concrete bias that Juror 12 could not set aside. <u>See</u> <u>id.</u> A juror's statement that he is more inclined to believe one witness over another who has a different profession or background is not a showing of bias. <u>Virgil</u>, 446 F.3d at 609-610. Ruth's claim regarding Juror 12 is based on facts that show no more than a "mere possibility" and fall short of the burden Ruth must satisfy for the second <u>Strickland</u> prong. <u>See</u> <u>Lamb</u>, 179 F.3d at 463.

Ruth cites Texas case law in support of his argument of juror bias.[17] The Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law." <u>Wood v. Quarterman</u>, 503 F.3d 408, 413 (5th Cir. 2007), <u>quoting</u> <u>Estelle v. McGuire</u>, 112 S. Ct. 475, 480 (1991), <u>quoting</u> <u>Lewis v. Jeffers</u>, 110 S. Ct. 3092, 3102 (1990).

Ruth fails to provide "clear and convincing evidence" for any of his claims of juror bias. <u>See</u> 28 U.S.C. § 2254(e)(1). Ruth presents no persuasive argument of juror bias that meets the heightened burden of the AEDPA and <u>Strickland</u> standard. The state court's adjudication of Ruth's claims regarding his attorney's jury selection was not a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C.

---

[17]<u>See</u> Petitioner's Motion in Opposition of Summary Judgment ("Petitioner's Opposition"), Docket Entry No. 25, p. 31.

§ 2254(d)(1).  Nor has Ruth shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2). Therefore, claims 1 and 2 will be dismissed.

**D.  Claim 3:  Failure to Prepare for Trial**

Ruth alleges that he was denied effective assistance of counsel because trial counsel did not prepare for trial.[18]  Ruth refers to a colloquy between the court and counsel in which his attorney sought a continuance indicating that he was not prepared for trial.[19]  However, Ruth does not identify any specific deficiencies in his attorney's performance.  His bald assertions do not raise a fact issue regarding his counsel's performance. Smallwood v. Johnson, 73 F.3d 1343, 1351 (5th Cir. 1996).  Ruth's allegations are conclusory because he does not state how his counsel failed to prepare; nor does he provide any evidence to demonstrate that counsel was not prepared for trial.

Contrary to Ruth's argument that his attorney failed to prepare for trial, the trial record shows that his attorney filed a Motion to Suppress Statements, a Motion for Discovery of Punishment Evidence, a Motion for Discovery, a Motion for Discovery of Exculpatory and Mitigating Evidence, a Motion to Testify Free of

---

[18]See Petition, Docket Entry No. 1, p. 7-7a.

[19]See Petition, Docket Entry No. 1, p. 7-7a; see also Memorandum of Law, Docket Entry No. 4, pp. 29-33.

Impeachment, and a Motion in Limine more than five months prior to trial. (Docket Entry No. 23-28, pp. 15-38)   The record also reflects that the State sent its Notice of Intent to Use Extraneous Offenses and Prior Convictions more than two weeks before trial as well as an undated notice of Brady[20] material.   (Docket Entry No. 23-28, pp. 66-67, 72-75)   Upon receiving the Brady material Ruth's attorney filed a motion for continuance, which the court denied after conducting a hearing.  (Docket Entry No. 23-2, pp. 4-17)   However, the court did allow Ruth's attorney to examine several offense reports before going to trial. Id. at 14-15.   The court also granted the Motion to Testify Free of Impeachment.   Id. at 16.

Ruth contends that counsel's alleged failure to prepare is evidenced by his elicitation of "harmful testimony," but points to no specific testimony, other than the cross-examination addressed below in this Memorandum Opinion and Order.   Ruth presents only conclusory statements and repetition of claims he states elsewhere in his Petition.[21]   "[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal."   Blackledge v. Allison, 97 S. Ct. 1621, 1629 (1977).  This court can find no merit to Ruth's claim because he has failed to show that his attorney's performance was constitutionally deficient. Miller v. Johnson, 200

---

[20]Brady v. Maryland, 83 S. Ct. 1194 (1963).

[21]See id.

F.3d 274, 282 (5th Cir. 2000), citing Ross v. Estelle, 694 F.2d 1008 (5th Cir. 1983).  The lack of any evidence to support Ruth's allegations falls far short of the Strickland standard, and Ruth's claim of inadequate assistance of counsel by failure to prepare for trial shall be dismissed.

**E.   Claim 4:   Failure to Prepare for Punishment Phase**

Ruth alleges that trial counsel failed to prepare to cross-examine Vivian Gray, who testified for the State regarding her stepfather's murder, the offense for which Ruth was convicted in 1980.[22]  Ruth alleges that his trial attorney's poor preparation elicited damaging testimony from the witness.[23]  Before Ruth's attorney cross-examined the witness, the State's attorney had the witness explain in detail how Ruth had shot the witness's family -- hospitalizing the witness and her mother and killing her stepfather.[24]  Following this direct examination, Ruth's attorney cross-examined the witness.[25]  The exchange included the following:

[Counselor]:  Did your mom like Joe or not?

[Witness]:  She liked Joe.

---

[22]See Petition, Docket Entry No. 1, p. 7-7a; see also Memorandum of Law, Docket Entry No. 4, pp. 34-37.

[23]See id.

[24]See Guilt/Innocence Punishment, The State of Texas v. Joseph Pernell Ruth, Cause No. 914967, included in State Court Records, Vol. 14, pp. 98-102.

[25]Id. at 105-118.

[Counselor]: Even after he almost poked your eye out and bashed you in the head with a beer bottle, she liked him then?

[Witness]: She still likes Joe.

. . .

[Counselor]: [Ruth] was definitely the first shooter right, he fired first?

[Witness]: Yes.

[Counselor]: And that this was just a blatant attempt to kill you, right?

[Witness]: Yes.

. . .

[Counselor]: So why do you let [your son] associate with this crazy person [Ruth]?

[Witness]: It's his dad.

[Counselor]: Well, I mean, you must be just terrified about that?

[Witness]: Of course.

[Counselor]: But I thought you were very concerned about [your son]?

[Witness]: I am.

. . .

[Counselor]: Make any reports to the police?

[Witness]: No.

[Counselor]: So, how did your mom get from Wal-Mart to the car to get your gun from you to engage Joe Ruth in combat?

[Witness]: I just remember the screaming, I remember my mother walking out.

[Counselor]: No, I'm trying to understand this. [Ruth] is standing there just shooting at y'all and your mom –

-25-

[Witness]:   [Ruth] had placed [their son] on the hood of the car.

[Counselor]:   I got that part.  And then your mom comes over to the car and in the middle of a hail of bullets manages to get your gun from you and fight back and shoot [Ruth]; is that what you're saying?[26]

"'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .'"  Riley v. Dretke, 362 F.3d 302, 305 (5th Cir. 2004), quoting Wiggins v. Smith, 123 S. Ct. 2527, 2535 (2003). "There are countless ways to provide effective assistance  in any case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 104 S. Ct. at 2065.  The record reflects that Ruth's attorney was trying to discredit the witness by illustrating her reckless behavior concerning the well-being of her child.  Ruth's attorney may also have been trying to make the witness's testimony seem implausible. Since direct examination had already exposed the jury to the story, it is unlikely that the attorney's cross-examination prejudiced Ruth's defense by exploring the story further with the witness. Given the context of the witness's prior testimony, the attorney's questions are based on the tactic of discrediting the witness. Therefore, the record reflects that Ruth's defense was not prejudiced by his attorney's questions because they were based on trial tactics that were not so ill chosen that Ruth was denied a

---

[26]Id. at 115-118.

fair trial.  <u>Teague v. Scott</u>, 60 F.3d 1167, 1172 (5th Cir. 1995).
Because Ruth fails on both the first and second prong of the
<u>Strickland</u> standard, this claim will be dismissed.  <u>Strickland</u>, 104
S. Ct. at 2064.

**F.   Claim 6:  Failure to Put on a Valid Defense**

Ruth alleges that trial counsel "fail[ed] to put on a valid
defense based on the facts of the case."   (Docket Entry No. 1,
p. 10)  Ruth contends that his attorney was ineffective because he
put on a defense that Ruth did not do the crime.  He argues that
the defense strategy went against the great weight of the evidence,
which demonstrated that Ruth was guilty.  Ruth contends that his
attorney should have either pursued a temporary insanity defense or
self-defense.  <u>See also</u> Memorandum of Law, Docket Entry No. 4-1,
pp. 4-6.  Ruth further contends that his attorney's "defensive
theory was contrived, hastily and it permeated the entire trial
with obvious unfairness."  <u>Id.</u> at 5.

"A conscious and informed decision on trial tactics and
strategy cannot be the basis for constitutionally ineffective
assistance of counsel unless it is so ill chosen that it permeates
the entire trial with obvious unfairness."  <u>Green v. Johnson</u>, 116
F.3d 1115, 1122 (5th Cir. 1997) (quoting <u>Garland v. Magio</u>, 717 F.2d
199, 206 (5th Cir. 1983) (on rehearing)).  <u>See also Skinner</u>, 528
F.3d at 341.  Defense attorneys have finite resources to
investigate their cases and must make choices concerning which

lines of defense to pursue.  <u>Moreno v. Estelle</u>, 717 F.2d 171, 177 (5th Cir. 1983).  The court must look at the totality of circumstances before assessing the reasonableness of the attorney's strategic choices.  <u>Id.</u>

Ruth provides no evidence that his attorney's defensive theory was permeated with unfairness.  His argument is contradicted by an affidavit he submitted from his sister in which she attests that the attorney met with Ruth's wife Clara and other family members before trial.  (Docket Entry No. 3, p. 1)  During the meeting Clara repeated that "everyone thought that she did it."  <u>Id.</u>  Ruth's attorney responded, "that could be our line of defense."  (Docket Entry No. 3, p. 1)

The trial transcript reflects that the attorney had a well organized opening statement in which he presented a narrative describing the difficult and often confrontational relationships between Ruth, Clara, and the victim.  (Docket Entry No. 23-13, pp. 11-17)  The attorney informed the jury that the evidence would show that there were episodes of domestic violence in which the victim was often the aggressor.  <u>Id.</u>  The attorney also indicated that Ruth had told Clara that he wanted a divorce and that Clara had told someone that she had bought a gun and was "going to blow that bitch's brains out."  <u>Id.</u> at 17.  The attorney also stated that the evidence would show that she told two people that she was responsible for the murder after it happened.  <u>Id.</u>  The attorney

concluded his argument by pointing out flaws in the State's evidence.  Id. at 17-19.

The state district court concluded that Ruth received effective assistance of trial counsel and implicitly found that the attorney had developed and used a reasonable, tenable trial strategy.  (Docket Entry No. 23-37, p. 8)  The record shows that Ruth's attorney had developed a defense based on the theory that the victim had previously threatened Ruth and that Ruth's wife may have perpetrated the crime.  The strategy was not so ill chosen that it denied Ruth a fair trial.  Skinner, 528 F.3d at 341.

In his response Ruth contends that his attorney failed to bring an affirmative defense on family violence.  Ruth argues that he and his family urged his attorney to call an expert on family violence to testify regarding the decedent's history of violence toward Ruth and his family.[27]  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009); see also Wilkerson v. Cain, 233 F.3d 886, 892 (5th Cir. 2000).  To pass the Strickland standard Ruth must show that a specific witness would have testified and the testimony would have been favorable.  See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir.

_____

[27]See Petitioner's Opposition, Docket Entry No. 25, pp. 42-44.

-29-

2002).   Ruth provides no specific witness; he suggests merely a theoretical expert.   "Hypothetical or theoretical testimony will not justify the issuance of a writ."  <u>Martin v. McCotter</u>, 796 F.2d 813, 819 (5th Cir. 1986) (internal citations omitted).

Moreover, it is clear from the record that Ruth threatened the unarmed victim with a gun and that the victim begged for mercy. The violent nature of the crime would have defeated an argument that Ruth was acting in self-defense.  <u>See id.</u>  The state court's adjudication of Ruth's claims regarding his attorney's trial strategy was not a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).   Nor has Ruth shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).

## G.   Claim 7:  **Right to Confrontation Violation**

Ruth alleges that his "right to confrontation . . . was violated by court admitting [Ruth's] wife's 911 call."  (Docket Entry No. 1, p. 11)  Ruth alleges that his wife's 911 phone call was testimonial in nature because when she made the call she was 15 minutes away from the scene of the crime.[28]

Ruth raised this issue on direct appeal, and the Texas courts rejected it.   The Fourteenth Court of Appeals reviewed the

---

[28]<u>See</u> Memorandum of Law, Docket Entry No. 4, pp. 48-49.

transcript and found the following statements from Ruth's wife in her 911 call: "I left my house and my husband's girlfriend whatever was in the house and . . . they started arguing.  He pulled out a gun so I left. . . .  I don't know what's going to happen. . . .  They're arguing.  He has a gun. . . .  They always have arguments."  Ruth, 167 S.W.3d at 564.

The Fourteenth Court of Appeals observed that the pattern and circumstances of the call conformed to that of a person summoning the police after witnessing a crime in progress in her home.  Ruth, 167 S.W.3d at 569.  Such statements are made not in response to police interrogation, but with the purpose of obtaining help.  Id. The Court of Appeals concluded that "Clara's statements to the 911 operator were not testimonial, and therefore the trial court's admission of testimony regarding these statements did not violate [Ruth's] confrontation rights."  Id.  The Court further held that admission of the 911 tape would be harmless even if it were made in error because Clara had also made statements to her mother that Ruth had shot the victim multiple times.  Id. at 570.  This coupled with other evidence, including Ruth's statements to the police, was far more incriminating.  Id.  The Court concluded that the admission of the tape did not contribute to Ruth's conviction.

The Supreme Court reviewed the concept of non-testimonial statements a few months after the CCA refused Ruth's PDR.  In Davis v. Washington, 126 S. Ct. 2266 (2006), the Court held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 126 S. Ct. at 2273-2274.

The Supreme Court acknowledged that a 911 operator's inquiries about an ongoing emergency are an interrogation in one sense, but not necessarily in a testimonial sense. Id. at 2274. If the caller is reporting about events that are actually happening and is seeking emergency assistance, then the statements are not testimonial. Id. at 2276. The Supreme Court further explained matters to be considered when reviewing statements made during an "ongoing emergency." Michigan v. Bryant, 131 S. Ct. 1143, 1158-1159 (2011). The immediacy of the danger and the specific context are of particular importance in determining whether the statements made during an emergency situation might be testimonial. See id. at 1158-1159. "[T]he duration and scope of an emergency may depend in part on the type of weapon employed." Id. at 1158.

Bryant supports the state courts' determination that the 911 call was admissible because it was made for the purpose of seeking help in an emergency. The state courts' analyses of the factual findings made in determining whether the 911 call was testimonial are entitled to a presumption of correctness. Wood v. Allen, 130 S. Ct. 841, 845 (2010); Miller-El v. Cockrell, 123 S. Ct. 1029,

1041 (2003).  Therefore, under AEDPA standards, the court cannot grant relief, and this claim will be dismissed.

**H.   Claim 8:  Expert Witness on Family Violence**

Ruth complains that his attorney failed to bring an affirmative defense on family violence.  Ruth argues that he and his family urged his attorney to call an expert on family violence to testify regarding the decedent's history of violence toward Ruth and his family.[29]  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009); see also Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010); Wilkerson v. Cain, 233 F.3d 886, 892 (5th Cir. 2000).  Accordingly, "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  Day, 566 F.3d at 538; see also Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008); O'Brien v. Dretke, 156 F. App'x 724, 733 (5th Cir. 2005).  This requires the production of "affidavits from those non-testifying witnesses attesting under

----

[29]See Petitioner's Opposition, Docket Entry No. 25, pp. 42-44.

oath as to (1) what they would have said at trial and (2) that in fact they would have testified at trial if they had been asked." Adams v. Quarterman, 324 F. App'x 340, 350 (5th Cir. 2009).

Ruth fails to name a specific witness; he merely suggests a theoretical expert. This is not sufficient to prove that his attorney was ineffective. See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). "Hypothetical or theoretical testimony will not justify the issuance of a writ." Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1986) (internal citations omitted). Moreover, it is clear from the record that Ruth threatened the unarmed victim with a gun and that the victim begged for mercy. The violent nature of the crime as revealed in the state trial record would have defeated an argument that Ruth was acting in self-defense. See Martin, 796 F.2d at 819. The state court's adjudication of Ruth's claims regarding his attorney's trial strategy was not a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor has Ruth shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

I.   **Claim 5:   Effective Assistance of Appellate Counsel**

Ruth alleges that he was denied effective assistance of counsel on appeal because his appellate counsel failed to raise the following claims:

1.    prosecutorial misconduct;

2.    ineffective assistance of trial counsel for failing
      to strike jurors and a valid defense;

3.    trial court's failure to grant a mistrial;

4.    trial court's failure to quash the jury panel; and

5.    trial court's failure to give the jury a charge on
      sudden passion.

The state habeas court rejected Ruth's contention that his appellate counsel was ineffective by concluding that Ruth failed to prove any of the clams he alleged that his appellate counsel should have made had a reasonable probability of success.  (Docket Entry No. 23-37, p. 7)  Strickland's two-prong test regarding deficient performance and prejudice applies in determining whether appellate counsel was ineffective.  Smith v. Robbins, 120 S. Ct. 746, 764 (2000).  To establish deficient performance Ruth must show that his appellate attorney unreasonably failed to discover non-frivolous issues and include them in his brief.  Id.  However, appellate counsel is not required to include every non-frivolous claim in his brief.  Id. at 765; see also Sharp v. Puckett, 930 F.2d 450, 452 (5th Cir. 1991).  To establish prejudice Ruth "must show a reasonable probability that but for his counsel's unreasonable failure" to raise the claims asserted by Ruth in his brief, Ruth would have prevailed on appeal.  Robbins, at 764.  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Id. at 765, quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.

-35-

1986); see also Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011).

Ruth contends that the State's counsel engaged in prosecutorial misconduct during voir dire by expressing her opinion that the killing was not justified.[30]   Ruth's attorney made an objection, which the court sustained and ordered the jury to disregard; however, the court denied the motion for mistrial.   Ruth argues that the panel should have been quashed and that this should have been raised on appeal.   In considering such a claim, the court must determine whether the alleged misconduct was "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"   Greer v. Miller, 107 S. Ct. 3102, 3109 (1987), quoting United States v. Bagley, 105 S. Ct. 3375, 3380 (1985). Ruth points out a single instance during voir dire in which the prosecutor commented that it was her opinion that the killing was not justified.   The court immediately issued a curative instruction.   Ruth fails to demonstrate that his right to a fair trial was violated or that he would have prevailed if he had raised such a claim on appeal.   See Greer, at 3109.

Ruth's claim concerning his trial attorney's alleged failure to strike jurors has been previously addressed in this Memorandum Order and Opinion.   In his Memorandum of Law (Docket Entry No. 4, p. 40) Ruth cites a Texas appellate court decision in support of

---

[30]Reporter's Record, Vol. 3, p. 103 (not scanned).

his argument that he was denied effective assistance of counsel during voir dire. <u>Goodspeed v. State</u>, 120 S.W.3d 408 (Tex. App. [Texarkana] 2003). <u>Goodspeed</u> concerned a jury trial in which the defense attorney failed to ask any questions of the venire panel and used two of his peremptory strikes on prospective jurors who had already been excused for cause by the trial court. <u>Id.</u> at 411-412. Ruth's attorney asked numerous questions during voir dire and did not waste any peremptory strikes on excused panel members. Moreover, the Texas Court of Criminal Appeals reversed the decision, and the court of appeals subsequently affirmed the conviction. <u>Goodspeed v. State</u>, 187 S.W.3d 390 (Tex. Crim. App. 2005); 167 S.W.3d 399 (Tex. App. [Texarkana] 2005). Ruth presents no persuasive authority that his appellate attorney was ineffective by not appealing the alleged voir dire error.

Ruth's claim concerning his appellate attorney's failure to seek a jury instruction on "sudden passion" concerns a state law issue that is not subject to federal habeas review. <u>Creel v. Johnson</u>, 162 F.3d 385, 390 (5th Cir. 1998), citing <u>Valles v. Lynaugh</u>, 835 F.2d 126, 127 (5th Cir. 1988); <u>Alexander v. McCotter</u>, 775 F.2d 595, 601 (5th Cir. 1985). Federal courts defer to the state courts on whether such an instruction is warranted. <u>Id.</u> Moreover, the evidence in the record indicates that Ruth's conduct, in which he shot the victim fifteen times, would preclude a finding by a rational jury that he acted under sudden passion when he committed the homicide. <u>See Ahrens v. State</u>, 43 S.W.3d 630, 635-36

(Tex. App.–Houston [1st Dist.] 2001), <u>citing</u> <u>Rousseau v. State</u>, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).

Ruth also contends that he was denied effective assistance because appellate counsel failed to appropriately brief the 911 call for appellate review.   Ruth must prove that he would have prevailed on appeal but for the failure of his appellate counsel. <u>See</u> <u>Robbins</u>, 120 S. Ct. at 764.   Ruth's claim regarding the 911 call has been previously reviewed and rejected in this Memorandum Opinion and Order.   Ruth provides no convincing evidence that he could have prevailed on his claim but for his appellate counsel.

The state court's adjudication of Ruth's claims regarding his appellate attorney's performance was not a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States.   28 U.S.C. § 2254(d)(1).   Nor has Ruth shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   28 U.S.C. § 2254(d)(2).

### IV.   <u>Motion for Discovery</u>

Ruth filed a motion for discovery to obtain a copy of "any documents that [Thaler] has requested and receives . . . specifically the affidavit of counsel." (Docket Entry No. 21)   "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary

course." <u>Bracy v. Gramley</u>, 117 S. Ct. 1793, 1796-1797 (1997). The court may grant at its discretion the motion "where specific allegations" show reason to believe that a petitioner will develop the facts to demonstrate an entitlement to relief. <u>Id.</u> at 1799 (quoting <u>Harris v. Nelson</u>, 89 S. Ct. 1082 (1969)). Here, Ruth demonstrates no specific allegations that give reason to believe that any pertinent facts in the requested documents entitle him to relief. Therefore, Ruth's Motion for Discovery (Docket Entry No. 21) will be denied.

### V.  <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253 Ruth needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his Petition. To obtain a certificate of appealability Ruth must make a substantial showing of the denial of a constitutional right. <u>Williams v. Puckett</u>, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing Ruth must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, Ruth has not made a substantial showing of the denial of a constitutional right. <u>Newby v. Johnson</u>, 81 F.3d 567, 569 (5th Cir. 1996). The court will therefore deny a Certificate of Appealability in this action.

## VI.   <u>Conclusion and Order</u>

For  the  reasons  explained  above,  the  court  **ORDERS**  the following:

1.    Respondent  Thaler's  Motion  for  Summary  Judgment (Docket Entry No. 22) is **GRANTED**.

2.    The  Petition  for  a  Writ  of  Habeas  Corpus  By  a Person  in  State  Custody  (Docket  Entry  No.  1)  is **DISMISSED WITH PREJUDICE**.

3.    Ruth's  Motion  for  Leave  Requesting  Discovery (Docket Entry No. 21) is **DENIED**.

4.    A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this 23rd day of August, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-40-